UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| J.D., | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.  10-30081-MAP |
| | ) | |
| | ) | |
| WILLISTON NORTHAMPTON | ) | |
| SCHOOL, BRIAN R. WRIGHT, | ) | |
| DENNIS P. RYAN, JEFFREY | ) | |
| KETCHAM, JOHN D.  JOHNSON, | ) | |
| BENJAMIN THOMPSON, | ) | |
| Defendants | | |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT RYAN'S MOTION
TO QUASH (Document No. 110)
September 12, 2011

NEIMAN, U.S.M.J.

Presently before the court is Defendant Dennis Ryan ("Ryan")'s motion to quash

Plaintiff J.D.'s subpoena served on James L. Sharp, Ph.D., Ryan's psychotherapist.

Ryan also seeks a protective order "prohibiting the plaintiff[ ] or anyone on [her] behalf

from further seeking discovery with respect to [his] mental health or his mental health

counseling."  For the reasons which follow, the motion will be granted.

1.

Ryan makes several arguments in support of that part of his motion which seeks

to quash Plaintiff's subpoena.  First, he asserts that the subpoena -- which requests

"any and all documents of any kind, including progress notes, letters, memos, electronic

mail, drafts, calendar or appointment entries, prescription records or any other writing

relating to Dennis P. Ryan" -- is overly broad in that it is unlimited in scope and time.

Second, Ryan argues that much of the material requested is protected by the

psychotherapist-patient privilege.  Third, Ryan argues that any diagnostic information is

irrelevant because his mental state is not at issue with respect to any of the claims

against him; as for Plaintiff's claims against the  Williston Northampton School

("Williston"), Brian Wright, Jeffrey Ketcham, John Johnson, and Benjamin Thompson

(collectively, "the Williston Defendants"), particularly the negligent hiring and retention

claims, Ryan asserts that it is questionable whether Williston could have required him to

disclose any such information.  Finally, Ryan asserts that his interest in protecting his

privacy outweighs Plaintiff's need for discovery because the violation of his privacy is

"immediate and substantial" and the information is not probative of what Williston knew

and whether it could have prevented the alleged harm.

 In response, Plaintiff offers a number of arguments why she is entitled to Dr.

Sharp's diagnoses of Ryan, if not the records themselves, but as well to further

responses to deposition questions posed to Ryan.  Plaintiff maintains that the diagnoses

may indicate that Ryan was suffering from mental health issues of which Williston could

have, and should have, become aware.  Plaintiff also maintains that such health issues

bear on both the reasonableness of Williston's investigation of Ryan's alleged assault

and the steps it took afterwards, as well as the actions forming the basis of Plaintiff's

claims of emotional distress, unfair educational practices, sexual harassment, and

defamation.  Finally, Plaintiff asserts that it is premature for the court to weigh the

prejudice to Ryan's privacy rights and that, at an appropriate time, he can pursue a

motion regarding the admissibility of such evidence.[1]

2.

As an initial matter, the parties do not dispute that the psychotherapist-patient privilege established by Mass. Gen. Law ch. 233 § 20B applies in this diversity case. Nor do the parties dispute that the court is required to quash subpoenas that seek such privileged data if no exception or waiver applies.  *See* FED. R. EVID. 501; FED. R. CIV. P. 45(c)(3)(A)(iii).

The Supreme Court has directed that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).  The privilege protects against compelled disclosure of notes made during the course of treatment. *Id.* at 18. "[R]ooted in the imperative need for confidence and trust" between the patient and the psychotherapist, the privilege is designed to avoid deterring people from seeking treatment for fear that they will suffer a disadvantage in later litigation." *Id.* at 11.  Consistent with this interest, the Court rejected any balancing test that would allow a judge, in determining questions of privilege, to weigh the privilege against the asserted need for the evidence.  *Id.* at 17-18.

---

[1] The court notes that Plaintiff, in opposition to Ryan's motion, claims not to have known the time period within which he was treated by Dr. Sharp, which Ryan had asserted was from December 21, 2005 through approximately June 21, 2007.  The court therefore asked Ryan to provide the records under seal so as to confirm the treatment dates.  That having been done, the court can report that the dates of treatment ran from December 21, 2005 through July 12, 2007.  The court has not found it necessary to otherwise review the records.

3.

There are certain exceptions to the privilege in Massachusetts, but none of those appear to apply in the case at bar.  In particular, Ryan has not introduced his mental or emotional condition as an element of his defense.  *See* Mass. Gen. Laws. ch. 233 § 20B(c).  *Cf. Sanchez v. U.S. Airways*, 202 F.R.D. 131 (D. Mass 2001) (plaintiff employee waived privilege when claiming emotional distress).  Nor is the court persuaded by Plaintiff's argument that Ryan's counsel's recent questioning of Defendant Benjamin Thompson at his deposition injected into this case Ryan's "motive and intent in communicating with the minor plaintiff in the manner in which he did." (Document No. 139 at 2; *see also* Document No. 244.)  Having reviewed the transcript, the court finds it difficult to make the leap Plaintiff suggests; simply put, the questioning in no way paved the way for Plaintiff to obtain Ryan's mental health records and diagnoses.  More to the point, such tenuous "motive" arguments, if accepted, would enable plaintiffs to obtain the psychological records of defendants in all sorts of lawsuits in which the defendants' mental health treatment is simply not in issue.

At best, Plaintiff's arguments are little more than a claim that Ryan's mental health records and diagnoses may have relevant information as to her claims against Ryan and the Williston Defendants, to which she should have access in pursuit of her case.  To accept such an argument would resurrect the balancing that *Jaffee* foreclosed and would disregard the principle that "'[p]arties ... do not forfeit [a privilege] merely by taking a position that the evidence might contradict.'" *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 985 (N.D. Ill. 2010) (quoting *United States v. Salerno*, 505

U.S. 317, 323 (1992)).  "If this principle were not the rule, then in virtually every case a waiver might be found since the party opposing the privilege could argue plausibly that the psychological records might well reveal significant evidence that would contradict the evidence offered by the party asserting the privilege or call into question the privilege holder's veracity."  *Id.*

4.

Given these standards, Plaintiff appears to acknowledge that she is not entitled to documents "which reflect patients' thoughts, feelings, and impressions, or contain the substance of the psychotherapeutic dialogue." (Plaintiff's Opposition to Ryan's Motion to Quash at 11.)  Plaintiff argues, however, relying on *Adoption of Saul*, 804 N.E.2d 359 (Mass. App. Ct. 2004), that certain diagnostic information about Ryan may be deemed non-communicative and, therefore, not covered by the psychotherapist-patient privilege.

*Saul* involved an action initiated by the Department of Social Services to dispense with a biological mother's consent to the adoption of her child.  The mother, who suffered from schizophrenia, objected to the admission of her diagnosis at the proceedings where her mental state was the sole dispositive issue.  *Id.* at 360-62.  The court determined that the diagnosis was not communicative and, therefore, not protected by the privilege.  *Id.* at 363.  The court, however, did not hold that all diagnostic information is immune from privilege: "[t]here may, of course, be instances when reference to a DSM diagnostic category may so implicate a patient's confidential communication that the diagnosis ought to be privileged."  *Id.* at 365 n.8.  Accordingly, the court directed, "[w]e leave to a case-by-case determination whether such references

5

are so revealing of patient communications as to involve the privilege." *Id.*[2]

While the parties appear to agree with the holding in *Saul*, the decision, in the court's view, does not support Plaintiff's arguments in opposition to Ryan's motion to quash.  There, the diagnosis went to the heart of the dispute; as the court explained, "[t]here was a connection between the mother's inability to parent and her mental illness; there was also ample evidence, apart from the diagnoses of mental illness, that the mother was unfit to parent Saul." *Id.* at 366.  Here, in stark contrast, the information subpoenaed from Dr. Sharp, even if narrowed to diagnoses as *Saul* appears to allow, is not relevant to Plaintiff's claims against Ryan.  Even non-privileged matter must be relevant to be discoverable.  *See* FED. R. CIV. P. 26(B)(1).

To be sure, Plaintiff argues broadly that Ryan's diagnoses, whether specific or general, would be relevant to explain his actions towards her.  However, in the court's opinion, such a vague, tenuous connection between the inherently private information sought and Plaintiff's claims is insufficient to require enforcement of the subpoena.  Moreover, the decisions upon which Plaintiff relies for this proposition are unpersuasive.  For example, in one, *Phillips v. General Motors Corp.*, No. Civ.A. 99-3423, 2000 WL

---

[2] In addition, one exception to the statutory privilege specifically relates to the proceedings underway in *Saul*.  *See* Mass. Gen. Laws ch. 22 § 20B(e) ("dispensing with the need for consent to adoption in which, upon a hearing in chambers, the judge, in the exercise of his discretion, determines that the psychotherapist has evidence bearing significantly on the patient's ability to provide suitable care or custody, and that it is more important to the welfare of the child that the communication be disclosed than that the relationship between patient and psychotherapist be protected; provided, however, that in such cases of adoption or the dispensing with the need for consent to adoption, a judge shall determine that the patient has been informed that such communication would not be privileged.").  Although this section was not invoked by the court in *Saul*, no similar provision is at play in the case at bar.

1407896, at *2-3 (E.D. La. Sept. 25, 2000),  the medical records at issue were not those

of a defendant but what appears to be the plaintiff.  More to the point, there is no

discussion of privilege in one decision with regard to those records.  Other cited

decisions, discussed below, are similarly inapposite.

5.

It is not surprising, as became evident during oral argument, that Dr. Sharp's

records have little to do with Plaintiff's claims against Ryan.  Rather, Plaintiff seeks Dr.

Sharp's records insofar as they may be relevant to her claims against the Williston

Defendants.  Although her arguments roam widely, Plaintiff bases her need  on her

claim that the Williston Defendants negligently hired and/or retained and/or "rehired"

and/or supervised Ryan.  In essence, Plaintiff argues, had the Williston Defendants

properly carried out these functions, they would have had access to Ryan's records, or

at least the diagnoses, and, accordingly, may have discovered information which would

have discouraged his being hired, rehired, or retained.  *See Armstrong v. Lamy*, 938 F.

Supp. 1018, 1046 (D. Mass 1996) ("[C]laim for negligent hiring requires evidence that

the employer failed to exercise due care in the selection of an employee, evidence that

the employer knew or should have known that the employee who was hired was unfit

and posed a danger to others who would come into contact with the employee during

the employment, and evidence that the employer's failure proximately caused the injury

of which the plaintiff complains"); *Foster v. Loft, Inc.*, 526 N.E.2d 1309, 1311 (Mass. Ct.

App. 1988) ("Negligent retention . . . occurs when, during the course of employment, the

employer becomes aware or should have become aware of problems with an employee

that indicated his unfitness, and the employer fails to take further action such as

7

investigating, discharge or reassignment.") (quoting *Garcia v. Duffy*, 492 So.2d 435, 438-439 (Fla. Dist. Ct. App. 1986)).

The court finds Plaintiff's arguments unconvincing.  First, it does not appear from the record that Williston ever attempted to obtain such mental health information about Ryan.  If true, that fact may well support Plaintiff's claims against the Williston Defendants, but it does little to support her argument that Ryan's diagnoses should be obtained through the instant subpoena.  Moreover, Plaintiff nowhere demonstrates that Williston could have or would have obtained any such information at the time it hired Ryan (*before* his treatment by Dr. Sharp actually began) or when Williston thereafter supervised and retained him.

Second, try as she might, Plaintiff has not shown how the diagnoses are relevant to Plaintiff's claims against the Williston Defendants.  At best, Plaintiff makes mention of an August 23, 2004 email from Ryan to Defendant Brian Wright in which he mentioned that "his living circumstances at Williston" had caused a strain on his "physical and mental health."  (*See* Document No. 113 at Ex. A.)  Plaintiff then asserts that neither Wright nor anyone else at Williston inquired further of Ryan about this statement or suggested that he seek counseling or made any effort to determine whether his condition presented a threat to students at Williston.  These allegations, of course, may go to Plaintiff's claims that the Williston Defendants failed to properly supervise Ryan, but they do not justify obtaining his mental health records.  In short, such information cannot be discovered on the basis of such attenuated relevance.

Third, yet other cases cited by Plaintiff are, as mentioned, inapposite, particularly *Moses v. Diocese of Colo.*, 863 P.2d 310, 321 (Colo. 1993) (position of trust occupied

8

by a priest coupled with the positive act of counseling a parishioner creates a fiduciary duty running from priest to congregant), upon which Plaintiff placed particular emphasis at oral argument.  In applicable part, *Moses* affirmed a verdict that an Episcopal diocese negligently hired and supervised a priest who had sexual relations with a parishioner. Unlike the situation in the case at bar, the defendant diocese required that potential priests undergo psychiatric evaluations and had *in its own files* psychiatric reports which indicated that the priest suffered from a variety of mental health problems.  Thus, the *Moses* decision, broadly speaking, might support Plaintiff's argument that an employer has a duty to exercise reasonable care in hiring and supervising its employees, *see also Mullins v. Pine Manor College*, 449 N.E.2d 331, 336 n.8 (Mass. 1983), but it fails to support Plaintiff's subpoena seeking to obtain Ryan's records from a psychologist who provided treatment on a private basis.[3]

6.

Finally, the court finds unpersuasive Plaintiff's arguments with regard to the necessity of having Ryan answer certain deposition questions.  Plaintiff has been made aware of the fact that Ryan had been treated by Dr. Sharp, the dates of that treatment, and the nature of the treatment received.  To that extent, therefore, Ryan's argument for a protective order is appropriate.

---

[3] Plaintiff also cites *Petrell v. Shaw*, 902 N.E.2d 401 (2009) as having favorably cited *Moses*.  Actually, the *Petrell* court found the plaintiff's reliance on *Moses* "misplaced" and affirmed the summary judgment for the defendants, including the claim that the bishop, who received an anonymous report of an alleged sexual relationship by the parish rector, was not negligent in supervising or retaining the rector.

CONCLUSION

For the aforementioned reasons, Ryan's motion is ALLOWED.

IT IS SO ORDERED.

DATED: September 12, 2011

    /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge